UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBIN M. BENDER,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-880
(TJM/VEB)

## I. INTRODUCTION

In June of 2006, Plaintiff Robin M. Bender applied for disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since May of 2005, due to various physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application. Plaintiff, through her attorney, Peter Antonowicz, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on June 19, 2006, alleging disability beginning on May 24, 2005. (T at 18, 66).[1] The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Utica, New York, on September 18, 2008, before ALJ Elizabeth Koennecke. (T at 582).  Plaintiff appeared with her attorney and testified. (T at 586-614).

On December 9, 2008, the ALJ issued a decision denying Plaintiff's application. (T at 18-26).  Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on June 29, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 7-9).

Plaintiff, through counsel, commenced this action on August 3, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on January 8, 2010. (Docket No. 9). Plaintiff filed a supporting Brief on June 21, 2010. (Docket No. 15). The Commissioner filed a Brief in opposition on July 22, 2010. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

proceedings.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

3

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2007 (the "date last insured").  He further concluded that Plaintiff had not engaged in substantial gainful activity from May 24, 2005, the alleged onset date, through the date last insured. The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Act as of the date last insured: fibromyalgia, right ulnar neuritis (status post right ulnar nerve transposition surgery), depressive disorder, anxiety disorder, and a history of cannabis abuse. (T at 20).

However, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 21).

The ALJ concluded that, through the date last insured, Plaintiff retained the residual

functional capacity ("RFC") to lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, push/pull 50 pounds occasionally and 25 pounds frequently, and climb, balance, stoop, kneel, crouch, or crawl occasionally. The ALJ further found that, as of the date last insured, Plaintiff had the RFC to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 21-22).

The ALJ determined that, as of the date last insured, Plaintiff did not have the RFC to perform her past relevant work as a nursing assistant, nurse's aide, and medical technician. However, the ALJ found that considering Plaintiff's age (41 on the date last insured), education (limited), and RFC (outline above), there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed as of the date last insured. (T at 24-25).

Accordingly, the ALJ determined that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from the alleged onset date through the date of last insured. (T at 25). As noted above, the ALJ's decision became the Commissioner's final decision on June 29, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 7-9).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of that position. First, Plaintiff contends that the ALJ erred by finding that her brain atrophy was a non-severe impairment. Second, Plaintiff argues that the ALJ did not correctly weigh the assessments of Plaintiff's treating

6

physicians. Third, she asserts that the ALJ's RFC assessment was based upon an error of law. This Court will address each argument in turn.

### a. Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5). The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a).

In this case, an MRI test conducted on May 17, 2006, revealed "evidence of diffuse atrophic change, discongruent with [Plaintiff's] age." (T at 428). The ALJ concluded that Plaintiff had not established that her brain atrophy, along with three other impairments (headaches, anemia, back pain), was a medically-determinable severe impairment that met the 12-month duration requirement under the Act. (T at 21). Plaintiff argues that her brain atrophy should have been considered a severe impairment.

As a threshold matter, this Court notes that the ALJ should have provided a more detailed explanation of her decision in this regard. It is difficult to undertake meaningful

review where, as here, the ALJ offers only a single conclusory sentence in support of her non-severe finding, without any indication as to the rationale underlying her decision. However, notwithstanding this deficiency, this Court finds no reversible error with regard to the ALJ's assessment as to this issue.

First, although the Second Circuit has held that step two of the sequential evaluation is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). In this case, Plaintiff has established the diagnosis of brain atrophy, but has not pointed to any medical evidence of limitations during the relevant time period arising specifically from that condition.

Second, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act (including mental impairments – depression and anxiety disorder) and continued with the sequential analysis, any errors in her findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible

error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).[3]

### b. Treating Physician

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

---

[3] It should be noted that this finding is not intended to preclude the Commissioner from revisiting this issue upon further development of the record in the event that this Court's overall remand recommendation is adopted.

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

§ 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Hom Neupan, one of Plaintiff's treating physicians, completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) on July 17, 2008, in which the doctor opined that Plaintiff could lift/carry 10 pounds occasionally or frequently; stand/walk for less than 1 hour in an 8-hour day, and sit for less than 4 hours in an 8-hour workday. (T at 574). Dr. Marino Selvarajah, another treating physician, indicated on September 15, 2008, that Plaintiff could lift/carry 5 pounds occasionally or frequently; stand/walk for less than 2 hours in an 8-hour workday; and sit for less than 4 hours in an 8-hour workday. (T at 575).

The ALJ afforded these assessments "little weight" with regard to her disability determination. The ALJ explained this decision with two sentences. Specifically, the ALJ noted that "neither Dr. Neupane nor Dr. Selvarajah began treating [Plaintiff] until after the expiration of the date last insured." (T at 23). In addition, the ALJ indicated that the doctors' "assessments specifically stated that they do not cover the period under consideration." (T at 23).

The ALJ's decision in this regard was contrary to applicable law and was not supported by substantial evidence. Specifically, the ALJ's decision is based upon an apparent misreading of the record evidence. The treating physicians' reports indicate that the doctors began treating Plaintiff after March 31, 2007, the date last insured (Dr. Neupane began treating on July 13, 2007; Dr. Selvarajah began treating on September 11, 2007). However, contrary to the ALJ's finding, the physicians did not "specifically state"

that their assessments did not cover the relevant time period. In other words, the doctors merely reported the first and last treatment dates, but did not offer any opinion as to whether the assessed limitations existed prior to the first treatment dates. The ALJ's statement suggests that the physicians opined that their assessments did not apply to the relevant period. The records simply do not support this suggestion. The doctors offered no opinion one way or the other as to whether the limitations pre-dated the first treatment dates. Accordingly, the ALJ had an affirmative obligation to re-contact the treating physicians before assigning little weight to their assessments.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

There is no rule rendering evidence obtained subsequent to the date last insured irrelevant *per se*. To the contrary, as the Second Circuit has repeatedly observed:

> Evidence bearing upon an applicant's condition subsequent to
> the date upon which the earning requirement i.e., insured status

> was last met is pertinent evidence in that it may disclose
> the severity and continuity of impairments existing before
> the earning requirement date or may identify additional impairments
> which could reasonably be presumed to have been present
> and to have imposed limitations as of the earning requirement date.

Lisa v. Sec'y of Dept. of Health & Human Servs., 940 F.2d 40, 44 (2d Cir.1991) ( quoting Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41-42 (2d Cir.1972)).

In this case, the treating physicians began treating Plaintiff approximately three and five months (respectively) after the date last insured. There is nothing in the record to indicate that Plaintiff's limitations materially worsened during the intervals between the date last insured and the first dates of treatment with these physicians. There is certainly nothing in the doctors' assessments to indicate that they are assessing limitations arising from new or very recently aggravated conditions.

Indeed, Plaintiff alleges that her disabling conditions arose from an April 2005 incident in which a co-worker accidently splashed urine in Plaintiff's eyes. (T at 589). Because the urine was potentially infected with HIV, Plaintiff received anti-viral treatments. Plaintiff alleges disability based on the adverse side effects of the treatments. (T at 589, 600). Thus, it is certainly possible (and, indeed, quite likely) that the limitations assessed by the treating physicians were probative with regard to the severity and continuity of impairments existing before date last insured. At the very least, given these facts, the ALJ was obliged to re-contact the physicians to clarify this matter before categorically discounting the reports and assigning "little weight" to the treating physicians' opinions.

The ALJ appears to have believed either (a) that opinions rendered after the date last insured are *per se* entitled to little weight or (b) that the doctors' reports were intended to express an opinion that the assessed limitations only applied as of the dates of first

treatment. The former assumption is contrary to well-settled law; the latter is not supported by the facts.

Accordingly, a remand is required for further development of the record and reconsideration of the treating physicians' assessments. In this regard, it will likely be necessary to re-contact the treating physicians to obtain retrospective assessments of Plaintiff's limitations during the relevant time period. See Pollard v. Halter, 377 F.3d 183, 194 (2d Cir. 2004)(finding that "district court erred insofar as it categorically refused to consider the new evidence simply because it was generated after the relevant time period and did not "explicitly discuss [claimant's] condition during the relevant time period"); Lisa, 940 F.2d at 44 (explaining that subsequent evidence may disclose the "continuity of impairments existing before the earning requirement date"); Reyes v. Barnhart, 226 F.Supp.2d 523, 530 (S.D.N.Y.2002) (finding that "the severity of the conditions in the period shortly after the relevant time period len[t] strong support to [the] conclusion that the very same conditions were disabling in the relevant time period."); Ventura v. Barnhart, No. 3:04-CV-1401, 2006 WL 1272668, at *20 (D.Conn. Feb.2, 2006) ("The Second Circuit has held that medical records that post-date the date last insured may be relevant to bolster the credibility of the plaintiff's subjective complaints.").

### c. RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ assessed that, through the date last insured, Plaintiff retained the RFC to lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for at least 6 hours in an 8-hour workday, sit for at least 6 hours in an 8-hour workday, push/pull 50 pounds occasionally and 25 pounds frequently, and climb, balance, stoop, kneel, crouch, or crawl occasionally.

These RFC findings are contradicted by the treating physicians' assessments discussed above. For example, Dr. Neupan opined that Plaintiff could lift/carry only 10 pounds occasionally or frequently and stand/walk for less than 1 hour in an 8-hour day. (T at 574). Both Dr. Neupan and Dr. Selvarajah indicated that Plaintiff could sit for less than 4 hours in an 8-hour workday. (T at 574-75). As outlined above, the ALJ improperly assigned little weight to these findings without first obtaining retrospective assessments from the treating physicians. Accordingly, the ALJ's RFC determination will necessarily need to be revisited on remand and reconsidered in connection with any additional evidence obtained from the treating physicians.

Moreover, the ALJ's findings with regard to Plaintiff's non-exertional limitations should also be revisited. The ALJ found that, as of the date last insured, Plaintiff had the

RFC to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 21-22).  However, Dr. Kristen Barry, a consultative examiner, opined that Plaintiff "appears to have a great deal of difficulty handling stressors" and "may have difficulty relating adequately to others and making appropriate decisions." (T at 209).  Dr. Barry characterized Plaintiff's prognosis as "guarded" and found Plaintiff's allegations of mental limitations to be consistent with her examination results. (T at 210).

Dr. Jeanne Shapiro also performed a consultative examination, in which she opined that Plaintiff cannot regularly attend to a routine or maintain a schedule because, *inter alia*, she is "unmotivated and lethargic." (T at 263).  Although Plaintiff might be emotionally capable of learning new tasks, Dr. Shapiro indicated that Plaintiff "may not be cognitively able to do so given her current complaints." (T at 263).  Dr. Shapiro also opined that Plaintiff appeared to have difficulty "adequately dealing with stress" and was unable to manage money. (T at 263-64).

The ALJ mentioned Dr. Barry's assessment that Plaintiff had difficulties with stress, relating adequately to others, and making appropriate decisions. (T at 23).  However, the ALJ did not incorporate those limitations into her RFC determination, which essentially included no mental limitations.  The ALJ did not offer a specific reason for disregarding this portion of Dr. Barry's assessment and did not explain how that portion of the assessment could be reconciled with the overall RFC determination.  The ALJ disregarded Dr. Shapiro's findings on the grounds that the findings were based on Plaintiff's subjective complaints, which the ALJ concluded were not fully supported by the record. (T at 23).

In sum, the ALJ set aside the findings of two consultative examiners, both of whom

15

assessed mental impairments, and concluded that Plaintiff had essentially no non-exertional impairments. (T at 23). This decision was largely based upon the findings of non-examining State Agency review consultants, which the ALJ found were entitled to "significant weight." (T at 23). Although the assessments of non-examining State Agency review consultants may provide additional support for an ALJ's decision, they cannot constitute substantial evidence sufficient to independently sustain a decision. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

In this case, the ALJ afforded less weight to the consultative examiners' assessments because they were based upon Plaintiff's subjective complaints. However, this finding ignores the fact that, unlike the State Agency review consultants, both psychiatrists were able to observe Plaintiff during the course of their examinations and make clinical observations and assessments concerning her limitations (separate and apart from their decision to credit Plaintiff's subjective complaints). In light of these issues, the matter of Plaintiff's non-exertional impairments should likewise be revisited on remand.

### 3.  Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper

disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

Dated:   November 29, 2010
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
November 29, 2010

18

Victor E. Bianchini
United States Magistrate Judge